**Affirmed and Opinion filed January 26, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-00093-CV

### JOHN DOE, Appellant

### V.

### ROMAN CATHOLIC ARCHDIOCESE OF GALVESTON-HOUSTON BY AND THROUGH DANIEL CARDINAL DINARDO, HIS PREDECESSORS AND SUCCESSORS, AS BISHOP OF THE ROMAN CATHOLIC ARCHDIOCESE OF GALVESTON-HOUSTON AND REVEREND TERRY BRINKMAN, Appellees

**On Appeal from the 125th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2010-41180**

## O P I N I O N

Appellant John Doe appeals from the trial court's grant of summary judgments in favor of appellees, the Roman-Catholic Archdiocese of Galveston-Houston and the Reverend Terry Brinkman, on the grounds that Doe's claims based on alleged sexual assault by Brinkman are barred by the statute of limitations. On appeal, Doe contends the trial court abused its discretion by refusing to continue the summary-judgment hearing so

that Doe could have a reasonable opportunity to conduct and obtain discovery to prove an exception to the affirmative defense of statute of limitations. We affirm.

I

Doe filed this lawsuit on July 2, 2010, alleging that between 1974 and 1976, when Doe was a minor, Reverend Brinkman sexually abused him. Doe alleged that the sexual contact occurred on property of the archdiocese, primarily when Doe was performing church-related services, such as serving as an acolyte, at St. Charles Borremeo Church. Doe further alleged that the archdiocese was vicariously liable for Brinkman's alleged wrongful conduct. In his petition, Doe asserted claims including negligence, breach of fiduciary duty, fraud, and conspiracy against the defendants. Doe's petition included a request for initial disclosures under Rule 194 of the Texas Rules of Civil Procedure.

Brinkman and the archdiocese, represented by separate counsel, answered, asserted affirmative defenses including the statute of limitations, and moved for summary judgment on limitations grounds.[1] They also moved to stay or limit discovery pending the trial court's ruling on the summary-judgment motions. The motions to stay or limit discovery were set for hearing on August 16, 2010, and the motions for summary judgment were set for hearing on August 30. In response, Doe filed an instrument titled "Plaintiff's Emergency Motion to Strike Defendants' Motion to Stay or Limit Discovery and Plaintiff's Emergency Motion to Strike or Stay Defendants' Motion for Summary Judgment, and Plaintiff's Response to Defendants' Motion to Stay or Limit Discovery, or Alternatively, Plaintiff's Motion for Continuance, and Plaintiff's Motion for Sanctions." Doe argued that the defendants' motions for summary judgment were premature and requested that the trial court cancel the August hearing dates until an adequate time for discovery has passed.

---

[1] The archdiocese and Doe entered into an agreement on April 27, 2007, tolling the statute of limitations with respect to Doe's claims as of that day. Thus, the question on summary judgment for the archdiocese was whether even April 27, 2007, was too late for Doe to have brought this action against it. Brinkman was not a party to the tolling agreement.

2

The archdiocese responded, asserting that it was entitled to move for summary judgment at any time, Doe's claims were time-barred on the face of his petition, and Doe did not plead any facts that would toll the statute of limitations. The archdiocese also asserted that Doe's voluntary statements to a psychiatrist whom he knew was retained by the archdiocese that he "never forgot" about the alleged abuse and told others about it more than a decade ago precluded any tolling theory. Additionally, the archdiocese contended that Doe's motion for continuance failed to satisfy the requirements of Rule 166a(g). In a supplemental response to the defendants' motions to stay or limit discovery, Doe asserted, among other things, that under the facts of this case the discovery rule, fraud, and fraudulent concealment should defer the statute of limitations' accrual date, and that the defendants were equitably stopped from even asserting limitations as a defense.

Doe's "emergency" motions were set for hearing on August 6, 2010. At the hearing, the trial court indicated that it was not prepared to rule on the substantive issues and requested additional briefing from the parties. That same day, the trial court signed an order denying Doe's motion for sanctions and reflecting that the defendants had passed their August 30 hearings on their motions for summary judgment. On August 16, the trial court conducted the previously set hearing on defendants' motions to stay or limit discovery. At the conclusion of the hearing, the trial court took the matter under advisement.

On August 31, Doe and the archdiocese entered into a Rule 11 agreement that the archdiocese was not required to object or respond to Doe's discovery requests until thirty days from the date of the trial court's written ruling on the on the archdiocese's motion to stay or limit discovery. Doe and Brinkman also entered into a similar agreement.

On September 27, the trial court denied the defendants' motions to stay or limit discovery, and on its own motion set the defendants' motions for summary judgment for

3

oral hearing on November 1, 2010.[2] Three days later, Doe filed an "Emergency Motion for Continuance" (Doe's second motion for continuance) in response to the trial court's November 1 setting, arguing that the parties' Rule 11 agreement would prevent him from receiving the defendants' objections and responses to his discovery requests before his response to the defendants' motions for summary judgment was due. After receiving additional briefing from the parties, the trial court denied this motion on October 13, 2010.

On October 18, the archdiocese sent a draft protective order to Doe, but Doe's attorneys did not immediately respond. The archdiocese's lawyers did not learn that Doe's lawyers objected to the proposed order until they arrived for Brinkman's deposition on October 21. No agreement on a protective order was ever reached.

On October 25, Doe filed a combined response to the defendants' motions for summary judgment and a verified motion for continuance. In this motion for continuance (his third), Doe stated that he had received some discovery from Brinkman and had taken his deposition, but he had received no discovery from the archdiocese, and he needed additional time to conduct discovery to support his claims and defenses to the statute of limitations. Brinkman and the archdiocese replied to Doe's filing. Among other things, the archdiocese asserted that it had offered to produce certain discovery under a proposed confidentiality agreement before Doe's response to its motion for summary judgment was due, but Doe would not agree to its terms. Additionally, both defendants reiterated that they were entitled to judgment because the statute of limitations had run years ago, Doe did not dispute his knowledge of the alleged abuse, and he failed to raise a fact issue on his asserted defenses to the statute of limitations. The defendants further responded that

---

[2] Doe faxed second requests for production to the defendants on September 29, and also served interrogatories to Brinkman. In response, the archdiocese represented that it would serve objections and responses to the requests for production before they were due, and Brinkman said he would respond to all pending discovery requests before October 15. Brinkman also agreed to be deposed on October 21, and the archdiocese offered to pay for an expedited transcript of the deposition if Doe wanted it.

the continuance failed to satisfy the requirements of Rule 166a(g). Two days later, on October 27, Doe also filed a motion to compel discovery.

On November 8, 2010, the trial court signed final judgments granting the defendants' motions for summary judgment "based on the expiration of the statute of limitations."[3] Later that same month, Doe filed a "Motion for Order Compelling Complete Answers to Interrogatories and Responses to Requests for Production" that did not mention the final judgments entered earlier. A hearing on this motion was set for December 6, 2010.

Also on December 6, Doe filed "Plaintiff's Motion to Reconsider Defendants' Motions for Summary Judgment and Verified Motion for Continuance and Motion for New Trial." In an affidavit accompanying this request for a continuance (Doe's fourth), counsel for Doe stated that additional time was needed to conduct full discovery because the discovery "cannot be secured from any other source and is necessary or material to raise a fact issue or issues" to defeat the defendants' motions for summary judgment and their affirmative defense of limitations. Doe filed a "supplemental" motion for new trial a few days later requesting that the trial court grant a new trial "in the interest of justice and fairness." After a hearing on Doe's motions to reconsider, for continuance, and for new trial, the trial court denied the motions. This appeal followed.

## II

On appeal, Doe argues he was allowed less than one month to conduct discovery before the summary judgments were granted and, at the time his response was due, he had no discovery from the archdiocese and only limited information from Brinkman. Doe also argues that the discovery he sought was the type of evidence that typically supports an exception to the statute of limitations in clergy sex abuse cases like this one, and he did everything he could to obtain the discovery being withheld. Consequently, Doe

---

[3] Apparently, a hearing on the defendants' motions for summary judgment was held on November 1, but was not included in the record.

contends the trial court abused its discretion by denying his verified motions for continuance[4] and granting summary judgment without allowing him necessary discovery that would support an exception to the statute of limitations and assist him in opposing summary judgment.

In response, the archdiocese and Brinkman maintain that Doe's motions do not satisfy procedural requirements and fail to identify any discovery needed that would be material to the limitations issue. We agree with the archdiocese and Brinkman.

A

This court reviews a trial court's ruling on a motion for a continuance for abuse of discretion. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.*

When a party argues it has not had an adequate opportunity for discovery before a summary-judgment hearing, that party must file an affidavit explaining the need for further discovery or a verified motion for continuance. Tex. R. Civ. P. 166a(g), 251, 252; *Joe,* 145 S.W.3d at 161. The affidavit must explain why the continuance is necessary; conclusory allegations are insufficient. *Carter v. MacFadyen*, 93 S.W.3d 307, 310 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). We may consider the following non-exclusive factors in determining whether the trial court abused its discretion: (1) the length of time the case has been on file, (2) the materiality and purpose of the discovery sought, and (3) whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *Joe*, 145 S.W.3d at 161.

---

[4] In his argument, Doe refers to his third and fourth motions for continuance, but does not appear to complain that the trial court abused its discretion by denying his first two continuance motions. In any event, these two motions were neither verified nor supported by an affidavit, and the trial court would not have abused its discretion by denying them. *See Carter v. MacFayden*, 93 S.W.3d 307, 310 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).

6

B

A cause of action accrues when a wrongful act causes some legal injury, even if the injury is not discovered until later, and even if not all resulting damage has occurred. *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996). The date of accrual is a question of law. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990).

For a claim arising from an injury received as a minor, limitations does not begin to run until the minor reaches majority. Minority is a legal disability, and the limitations period is tolled for the duration of a legal disability. Tex. Civ. Prac. & Rem. Code § 16.001. Because Doe's claims involve an alleged sexual assault, Doe's causes of action are subject to a five-year statute of limitations. Tex. Civ. Prac. & Rem. Code § 16.0045(a)(1); *Stephanie M. v. Coptic Orthodox Patriarchate Diocese of the So. U.S.*, No. 14-10-00004-CV, ___ S.W.3d ___, 2011 WL 1761353, at *4 (Tex. App.—Houston [14th Dist.] Mar. 17, 2011, pet. denied) (holding as matter of first impression that five-year statute of limitations applies to claims against diocese and church arising out of sexual assault of minor by priest). The five-year period started when the cause of action accrued. Tex. Civ. Prac. & Rem. Code § 16.0045(a)(1). Construing sections 16.001 and 16.0045(a) together, a plaintiff who was sexually assaulted as a minor must bring any claim arising out of that assault by his 23rd birthday.

Here, Doe's petition pleads that (1) the alleged assaults began in 1974, and (2) Doe was a minor at the time. The summary-judgment evidence indicates Doe was forty-seven years old on December 21, 2009. Thus, he would have turned 23 no later than December 21, 1985. Absent some theory that defers the accrual date or tolls the running of limitations, Doe's deadline to sue was on or before December 21, 1985, more than twenty years ago.

Examples of doctrines that may defer or toll the running of the statute of limitations include the discovery rule, fraudulent concealment, and equitable estoppel.

The discovery rule is a very limited exception which defers the accrual of a cause of action until the injury was or could have reasonably been discovered. *Shell Oil Co. v. Ross*, No. 10-0429, ___ S.W.3d ___, 2011 WL 6277778, at *5 (Tex. Dec. 16, 2011). It applies only when "the alleged wrongful act and resulting injury are inherently undiscoverable at the time they occurred but may be objectively verified." *S.V.*, 933 S.W.2d at 6. An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence. *Id.* at 7.

Although similar in effect to the discovery rule, the fraudulent-concealment doctrine is an affirmative defense to limitations that resembles equitable estoppel. *Seureau v. ExxonMobil Corp*. 274 S.W.3d 206, 228 (Tex. App.—Houston [14th Dist.] 2008, no pet.). This doctrine estops a defendant from relying on the defense of limitations if the defendant was under a duty to make a disclosure but fraudulently concealed the existence of a cause of action from the party to whom it belongs. *Id.* To prove fraudulent concealment, the plaintiff must demonstrate that the defendant had (1) actual knowledge that a wrong occurred, (2) a duty to disclose the wrong, and (3) a fixed purpose to conceal the wrong. *Id.; see also Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983). But the legal effect of concealment does not extend the limitations period indefinitely. *Etan Indus., Inc. v. Lehmann*, No. 10-0318, ___ S.W.3d ___, 2011 WL 6276308, at *2 (Tex. Dec. 16, 2011). This doctrine defers accrual only until the plaintiff learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action. *Borderlon*, 661 S.W.2d at 909.

Fraudulent concealment is akin to the broader doctrine of equitable estoppel. Equitable estoppel is not a cause of action but may be asserted as a defensive plea to bar a defendant from raising a particular defense. *See Joe*, 145 S.W.3d at 156 n.1. Equitable estoppel requires: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should

8

be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy*, Inc., 962 S.W.2d 507, 515–16 (Tex. 1998). As with fraudulent concealment, however, the estoppel effect ends when the plaintiff learns of facts, conditions, or circumstances which would lead a reasonably prudent person to inquire and thereby discover the cause of action. *See Marshall v. First Baptist Church of Houston*, 949 S.W.2d 504, 508 (Tex. App.—Houston [14th Dist.] 1997, no pet.).

## C

As noted above, Doe alleges Brinkman sexually abused him between 1974 and 1976, but he did not file suit until July 2, 2010. In their motions for summary judgment, the archdiocese and Brinkman presented evidence based on a psychiatric evaluation of Doe conducted on December 21, 2009, by Andrea Stolar, M.D. At the start of her interview, Dr. Stolar informed Doe that she had been retained by counsel for the archdiocese, she would be providing a report about him to the archdiocese's lawyer, and nothing Doe told her was confidential. During the interview, Doe admitted he had told his brother-in-law about the alleged abuse some twelve years earlier. He also admitted that he disclosed the claimed assault to his family "several years" earlier. Further, Doe told Dr. Stolar that he observed two male roommates having sex while he was in the army, which "brought up feelings of disgust about being sexually abused by a man." Doe joined the army when he was sixteen and was enlisted for three years. Dr. Stolar wrote in her report that Doe "was able to recall the [alleged] assaults in great detail" and he never forgot about them. She also indicated that, at the time of the interview, Doe was a 47-year-old man. Based on these facts, the archdiocese and Brinkman argued that Doe's admission to Dr. Stolar proved that Doe knew about the alleged abuse long before the limitations period expired.

Doe's third motion for continuance was verified and supported by his lawyer's affidavit. The substantive portion of the affidavit recites the following:

9

2. This case has been on file for less than four months.

3. Additional time is needed to conduct full discovery. This discovery cannot be secured from any other source, and it is necessary or material to challenge Defendant's Motions for Summary Judgment and their statute of limitations affirmative defense. Specifically, the information and items produced in discovery will assist Plaintiff in establishing Plaintiff's claims which defer, toll, or otherwise eliminate the statute of limitations defense or, at a minimum, will create a fact issue on this affirmative defense for a jury to decide.

4. This request for continuance is not for delay but [so] that justice may be done.

In the motion, Doe stated that "[f]ull discovery is necessary to assist Plaintiff in establishing his claims which defer, toll, and/or eliminate the statute of limitations altogether, which would oppose Defendants' Motions for Summary Judgment." Doe stressed that the case had been on file only four months, and explained that "[t]he necessary discovery includes documents or items in [the archdiocese's] possession as well as depositions." Doe also stated that "[t]his discovery cannot be procured from any other source."

Doe's fourth motion for continuance also was verified and supported by his lawyer's affidavit. In this motion, Doe made the same arguments he made before and, in addition, specified the particular documents and depositions he wanted.[5] Doe stated that he needed this discovery to help "establish or support of [his] claims, and particularly, claims . . . which defeat Defendant's Motions or limitations defense." Although Doe explained how he believed the information he sought would support his claims, he did

---

[5] The documents Doe identified as necessary discovery in the archdiocese's possession included "the employment or personnel file of Brinkman, correspondence and/or notes or memorandums relating to Brinkman's assignments and transfers, disciplinary measures or reprimands, notice to the [a]rchdiocese relating to Brinkman and other priests who sexually abused young boys or parishioners, documents and items relating to Brinkman having mental or emotional or substance abuse issues, and documents and items relating to his homosexuality" as well as "depositions of Doe's expert on Catholicism and historical policies and procedures and practices in the Catholic Church and dioceses, the custodian of records for the [a]rchdiocese, other altar boys who worked with and who were sexually abused by Brinkman, and past and present family, friends, parishioners, and/or colleagues of Brinkman."

not explain how it would enable him to defeat the defendants' asserted affirmative defense of limitations.

Indeed, in neither motion does Doe identify or explain what relevant facts he expected to discover that would enable him to defeat or raise a fact issue on the affirmative defense of limitations. Doe has not contended that anyone other than Brinkman allegedly abused him, or that he suffered from repressed memories or unsound mind, or that he was prevented from filing suit earlier due to threats, coercion, or duress. And there is no dispute as to his age, his knowledge of the alleged abuse for well over twenty years, and the date he filed suit. Although Doe generally asserts that the discovery he sought would support doctrines which would "defer, toll, or eliminate" the statute of limitations, including breach of fiduciary duty, fraud, concealment, the discovery rule, and equitable estoppel, he did not discuss the elements of these doctrines or explain how they would apply on these facts. Because Doe failed to explain how the additional discovery he sought was in any way material, the trial court did not abuse its discretion in denying the motions for continuance. *See Joe*, 145 S.W.3d at 162; *Duerr v. Brown*, 262 S.W.3d 63, 78–79 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Carter*, 93 S.W.3d at 310.

On appeal, Doe contends that claims like fraud, fraudulent concealment, conspiracy, breach of fiduciary duty, equitable estoppel, and the discovery rule "provide an exception to the affirmative defense of statute of limitations." He also maintains that the discovery he seeks is material "in a case like this" because it "is the type of evidence that typically supports these claims and an exception to the affirmative defense of statute of limitations." Doe first points to the affidavit of Father Thomas Doyle, which he attached to his motions below. Doe maintains that Doyle, described as an expert on Catholicism and "the clergy sex abuse crises," confirmed in his affidavit that the information and items Doe requested in discovery are the types of evidence that typically support claims like fraud, concealment, and equitable estoppel, and provide an exception

11

to the statute of limitations. Doe also argues that, because the archdiocese and Brinkman did not object to Doyle's affidavit, the facts Doyle recited must be accepted as true.

In his affidavit, Doyle avers that he has observed "common themes" in clergy sex abuse cases, including the intentional withholding of information or facts relating to priests' dangerous sexual propensities toward minors and the practice of reassigning offending clerics to other parishes or ministries. Doyle also avers that the Catholic Church regularly fails to follow its own legal procedures when abuse is reported, and goes to great lengths to prevent the disclosure of the extensive documentation it keeps on priests. Doe notes that Doyle describes the types of items that dioceses typically withhold in clergy sex abuse cases "throughout the world." But Doyle's affidavit contains no statement about this archdiocese, as opposed to dioceses generally, or its archbishop. And his opinions about "common themes" in sexual-abuse cases are neither sufficiently supported by facts nor specific enough to raise a fact issue on the defendants' limitations defense in this case. *See Carter*, 93 S.W.3d at 310 (conclusory allegations in an affidavit are not sufficient to support a motion for a continuance).

Doe next contends that the rule on summary judgment is to allow discovery so that disputes may "be decided by what the facts reveal, not what facts are concealed." *See Brewer & Pritchard, P.C. v. Johnson*, 167 S.W.3d 460, 466–67 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Doe argues that his lawsuit had only been on file four months, he had less than one month to obtain discovery, he had received little or no discovery from the defendants when the trial court granted summary judgment, and he was diligent in seeking discovery material to his case. Doe urges he had a right to engage in discovery before summary judgment was granted, and trial courts in Texas abuse their discretion by granting summary judgment when there has been very little time for discovery. In support of his position, Doe primarily relies on three cases: *Laughlin v. Bergman*, 962 S.W.2d 64, 65–66 (Tex. App.—Houston [1st Dist.] 1997, pet. denied); *Levinthal v. Kelsey-Seybold Clinic, P.A.*, 902 S.W.2d 508, 512 (Tex. App.—Houston [1st

Dist.] 1994, no writ); and *Verkin v. Sw. Ctr. One, Ltd.*, 784 S.W.2d 92, 95–96 (Tex. App.—Houston [1st Dist.] 1989, writ denied).

We acknowledge that Doe's lawsuit had been on file only a short time when the trial court granted the summary judgments. And we assume for purposes of argument that Doe was diligent in attempting to obtain discovery. But in this case, Doe failed to identify any facts he needed to discover before the hearing on the motions for summary judgment. Moreover, he failed to explain how any facts he might discover could support the doctrines he contended would defer or toll limitations in the face of Doe's age and his undisputed knowledge of the alleged abuse. A trial court does not abuse its discretion by refusing to permit the discovery of immaterial facts. *See Joe*, 145 S.W.3d at 162; *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. CBI Indus., Inc.*, 907 S.W.2d 517, 521–22 (Tex. 1995); *Wright v. Sydow*, 173 S.W.3d 534, 550 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).

Further, Doe's cases are distinguishable. In both *Laughlin* and *Levinthal*, unlike this case, the discovery sought was material and necessary. *See Laughlin*, 962 S.W.2d at 66 (trial court abused its discretion by denying plaintiff a continuance to depose plaintiff's former attorney and review his files in legal-malpractice case before ruling on attorney's summary-judgment motion when the discovery sought was "absolutely critical" to plaintiff's case); *Levinthal*, 902 S.W.2d at 511–12 (discovery sought by physician before trial court ruled on defendant medical clinic's summary-judgment motion was necessary to show a conspiracy to restrain trade and would not be readily available by means other than the discovery process in a case that had been on file for three months).

*Verkin* is also distinguishable, but for a different reason. In that case, a plaintiff moved for summary judgment on his own pleadings shortly after the defendant answered. 784 S.W.2d at 93–94. The appellate court's decision rested in part on the case's uncommon procedural posture. The defendant moved to continue the summary-judgment

13

hearing because he had not had enough time to investigate the plaintiff's claims and conduct discovery. *Id.* At 94. In explaining why an early motion for summary judgment filed against a plaintiff is different from one against a defendant who has just answered, the court stated, "We can presume a plaintiff has investigated his own case; we cannot make the same assumption about a defendant." *Id.* at 95–96.

Finally, Doe also argues that his knowledge of the alleged abuse by Brinkman does not necessarily start limitations running on his claims against the archdiocese. In oral argument, Doe asserted that the archdiocese owed Doe a fiduciary duty requiring it to disclose to him its knowledge of alleged abuse by priests and this failure to disclose is some evidence of fraud and concealment. According to Doe, because the archdiocese has to this day never informed him that he had claims against it, his causes of action against the archdiocese have not yet accrued. This argument is wholly untenable and contrary to settled law. As discussed above, doctrines that defer the accrual of a cause of action cease to apply once a plaintiff discovers or should have discovered knowledge that would cause a reasonably prudent person to inquire about his rights. Here, Doe's knowledge of the alleged abuse is the relevant knowledge for purposes of the accrual date of his claims against both Brinkman and the archdiocese. *See Stephanie M*., 2011 WL 1761353, at *3 (concluding that plaintiff's negligence claims against church and diocese were "not independent" of her claim of sexual abuse by priest).

Several cases illustrate the point that knowledge of the alleged abuse starts the clock. In *S.V. v. R.V.*, a woman sued her father for sexually abusing her. S.V., 933 S.W.2d at 3. She claimed she repressed all memory of the abuse, rendering the abuse inherently undiscoverable, and the discovery rule therefore deferred the limitations period. *Id*. at 8. The Supreme Court of Texas primarily focused on the "objectively verifiable" prong of the discovery rule, but it also recognized that the doctrine of fraudulent concealment could not apply to the plaintiff's claims because she knew of the

abuse: "[The plaintiff] does not allege fraud or fraudulent concealment, nor could she. [She] was not deceived into thinking that she was not being abused when she was." *Id.*

In *Marshall v. First Baptist Church*, 949 S.W.2d at 507–508, this court addressed the discovery rule, fraudulent concealment, and equitable estoppel in a case involving claims against a church arising out of an alleged sexual assault of a minor. In that case, Marshall sued his church, alleging that church's director of youth music sexually assaulted Marshall when he was twelve. *Id.* at 505. This court affirmed the trial court's grant of the defendants' summary-judgment motions on limitations because, like Doe, Marshall was "acutely aware" of the abuse and the church's alleged inaction within the limitations period, as he claimed he repeatedly reported the assault and the church never did anything about it. *Id.* at 507. This court affirmed, concluding that (1) the discovery rule did not apply because "[t]here is no question that Marshall had discovered the wrongful acts," and (2) fraudulent concealment and equitable estoppel did not apply because Marshall knew of his alleged abuse and resulting psychological injuries, noting that "[n]o one associated with the [c]hurch attempted to conceal them from him." *Id.* at 507–08. Like Marshall, Doe also says he reported the alleged abuse.

Similarly, in *Doe v. Linam*, 225 F. Supp. 2d 731, 733 (S.D. Tex. 2002), the plaintiff sued a priest and an archdiocese, claiming that the priest sexually abused him between 1973 and 1974. He alleged that his "chronic psychological condition . . . prevented him from understanding and appreciating that the serious emotional, physical, and sexual difficulties he suffers from were the direct result of the sexual abuse and other actions [of the defendants] until after January of 2002." *Id.* at 735. As here, the other actions were said to include an alleged cover-up by the archdiocese. *Id.* The court concluded that no theory applied to defer or toll the running of the statutes of limitation. *Id.* at 735–36. Specifically, the court held that the discovery rule did not apply, despite the plaintiff's professed lack of understanding of a link between his condition and the defendants' conduct, because the plaintiff knew of both the alleged abuse by the priest

and the archdiocese's alleged inaction after the abuse. *Id.* Fraudulent concealment also did not apply because the alleged abuse put the plaintiff on notice to investigate any other claim he might be able to assert. *Id.* at 736. As the court explained:

> Plaintiff was clearly aware he had been abused and that he was having psychological problems at the time before the statutes of limitations began to run on his various causes of action. His knowledge of these facts and circumstances could have reasonably led him to discover his allegedly concealed causes of action [against the [a]rchdiocese], if he had only made a simple inquiry into his rights.

*Id.*. Further, the court concluded that equitable estoppel did not apply because the plaintiff "admittedly had knowledge of the facts giving rise to his claims—the fact that he had been abused and the fact that he was suffering from psychological problems." *Id.* at 737.

Based on the foregoing, we conclude that the trial court acted within its discretion by denying Doe's motions for continuance and granting summary judgment.

* * *

We overrule Doe's issue and affirm the trial court's judgment.


/s/ Jeffrey V. Brown
   Justice


Panel consists of Justices Brown, Boyce, and McCally.

16