

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00016-CV

_____

CARLA BOUVIER, Appellant

V.

DOYCE ELAINE THOMPSON, GERAY WILLIAMS, AND JUDY SHOFU,
Appellees

---

On Appeal from the 17th District Court
Tarrant County, Texas
Trial Court No. 017-350187-24

---

Before Birdwell, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Wallach

**MEMORANDUM OPINION**

Appellant Carla Bouvier sued Appellees Doyce Elaine Thompson, Geray Williams (Williams), and Judy Shofu on claims related to the estate of Ezelle Williams Smother, a woman who Bouvier claimed was her mother. The trial court granted summary judgment for Williams and subsequently signed a take-nothing judgment on the remainder of Bouvier's claims. Bouvier now appeals. In three issues, she argues that the trial court abused its discretion by denying her motion for DNA testing, that the trial court erred by denying her no-evidence summary judgment motion, and that the statute of limitations did not bar her claims. We will affirm.

## Background

Bouvier filed suit in February 2024. After the trial court sustained Williams's special exceptions, Bouvier amended her petition to assert claims for "fraudulent concealment," "conspiracy to conceal estate information," breach of fiduciary duty, and "intimidation and coercion." She claimed that she had been deprived of her rightful inheritance and sought $250,000 in compensatory damages and $500,000 in punitive damages.

Williams answered and asserted the affirmative defense of limitations.[1] He then moved for traditional summary judgment and, separately, no-evidence summary judgment. In his traditional motion, Williams asserted that Bouvier's mother was

---

[1]Shofu filed a pro se answer. Thompson did not answer. Neither of them filed a brief in this appeal.

Joyce Williams, not Ezelle, but that even if Bouvier's allegations were correct, her prior court filing (a motion for default judgment) established that she had known the facts giving rise to her suit since 2014, making her claims barred by limitations. He cited the statutes of limitations applicable to fraud[2] and breach of fiduciary duty claims, and he noted that Bouvier's conspiracy claim shared a limitations period with its underlying tort. He asserted that, "[g]iven the other causes of action asserted in this case," Bouvier's conspiracy claim had a four-year limitations period.[3] *See* Tex. Civ. Prac. & Rem. Code §§ 16.004(a)(4), (5) (applying four-year limitations period to claims for fraud and breach of fiduciary duty); *Agar Corp., Inc. v. Electro Circs. Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019) (noting that "civil conspiracy [i]s a theory of derivative liability that shares a limitations period with that of its underlying tort").

---

[2]Bouvier's amended petition was not clear as to whether she was asserting fraudulent concealment as a defense to limitations or attempting to plead a fraud claim, but her summary judgment response asserted that she had alleged fraudulent concealment as a cause of action. Williams's traditional motion asserted as a ground the statute of limitations applicable to fraud claims, and the trial court construed the fraudulent concealment claim as a claim for common-law fraud or fraud by nondisclosure. Bouvier does not complain about that ruling on appeal. If Bouvier had intended to raise fraudulent concealment as a defense to limitations, she does not address it on appeal.

[3]From Bouvier's petition, it is unclear whether the underlying tort is her fraud claim or the breach of fiduciary duty claim; she alleged that Appellees "have conspired to prevent [her] from discovering her inheritance rights," and both her fiduciary duty claim and "fraudulent concealment" claim were based on the same allegation that Appellees had failed to disclose information about the estate. The petition cited a Massachusetts case, *Meyer v. Meyer*, 442 Mass. 50 (2004), but that case does not appear to exist.

Regarding her "intimidation and coercion" claim, Williams asserted that it was not a recognized cause of action. *See Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex. 1998) (noting that a trial court may grant summary judgment when a party's amended pleading after special exceptions fails to state a cause of action). He further asserted that to the extent that it was a cause of action, it was subject to a catchall four-year limitations period, Tex. Civ. Prac. & Rem. Code § 16.051, and that to the extent that Bouvier was asserting an assault or intentional infliction of emotional distress claim, it was subject to a two-year limitations period, *id.* § 16.003 (setting out two-year limitations period for claims for personal injury). *See Est. of Tobolowsky*, No. 05-19-00073-CV, 2020 WL 6143676, at *3 (Tex. App.—Dallas Oct. 20, 2020, no pet.) (applying Section 16.003 to assault claims); *Childers v. Gallagher Bassett Servs., Inc.*, No. 2-07-296-CV, 2008 WL 902796, at *2 (Tex. App.—Fort Worth Apr. 3, 2008, pet. denied) (applying Section 16.003 to claims for intentional infliction of emotional distress). Williams's no-evidence motion pointed out the elements of each of Bouvier's claims for which she had no evidence. He also asserted in that motion that "fraudulent concealment" is not a cause of action but is instead a defense that delays the application of limitations, *see Cooper v. Trent*, 551 S.W.3d 325, 335 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (noting that "fraudulent concealment is an affirmative defense to the statute of limitations; it is not an independent cause of action"), and he again asserted that "intimidation and coercion" is not a cause of action.

4

As evidence to support his traditional motion, Williams attached a copy of Bouvier's birth certificate, which stated that her mother was a woman named Joyce—not Ezelle—and that her father was Harry Williams. He also attached his affidavit in which he explained that Bouvier was his younger sister and the sister of the other defendants; that their mother was Joyce; that Bouvier had moved to the Boston area in 1995, and since then, "[m]uch of the contact with her [had] occurred in the form of phone calls and conversations filled with [her] stating that she was being stalked[ or] investigated by the FBI or CIA[ or relaying] other stories that did not have any merit or basis in reality"; that family members had offered to do DNA testing; that Joyce died in 2019; and that Joyce's estate had no money, such that family members had to pay her funeral expenses.

Williams further attached a copy of a motion for default judgment that Bouvier had filed in the case in May 2024. Bouvier had attached to the motion a document titled "References and Exhibits" in which she stated that she was "fully competent to testify" and "stated to the matters herein." Williams disputed the factual assertions that Bouvier made in the document, but he argued that it nevertheless showed that by 2014, she had knowledge of the alleged facts and events on which she based her claims.[4]

---

[4]Williams stated that he had been aware of Bouvier's allegations for some time because "she ha[d] been making such allegations—through legal proceedings such as the present matter, through social media[,] and otherwise—for nearly ten years," but he denied that any of her allegations were true.

In the document, Bouvier stated that in 2014, she visited Texas because she "had been in a dispute with Joyce Williams pertaining to [Bouvier's] biological mother Ezelle Williams and the inheritances [Ezelle] left for [Bouvier,] her only child."[5] She also asserted that she had filed "a paternity case against Joyce Williams in 2015." In another part of the document, which Bouvier labeled as Exhibit C and which purported to be a 2023 demand letter, she stated that in 2011, she had been told by "Al Freakes, a friend of George W. Bush," that Joyce was not her mother. *See Berry v. Berry*, 646 S.W.3d 516, 523 (Tex. 2022) (providing that the statute of limitations begins to run "when facts come into existence that authorize a party to seek a judicial remedy" (quotation marks and citation omitted)).

Additionally, the document asserted that Bouvier had learned in 2013 that the reason "why [she] was receiving terror and threats" was because of an inheritance that was owed to her and that during her 2014 trip to Texas, she had tried to talk to Williams about the inheritance that Ezelle had left her. In other words, Bouvier acknowledged in the filing that she had been aware no later than 2014 that Ezelle was her mother and had left her an inheritance. She also stated in the document that in the

---

[5]Neither party's brief or trial court filings directly explained who Ezelle was or her relationship to the family, but at the summary judgment hearing—at which Bouvier did not appear—Williams's attorney stated that Ezelle was Bouvier's aunt. Further, Bouvier asserted in the "References and Exhibits" document that Joyce was "her aunt by marriage[;] Joyce married into the Williams family and Joyce's children are her first cousins" who "hold no merit over her mother's estate." These assertions suggest that Ezelle was Harry Williams's sister.

2014 conversation with Williams in which she had asked about the inheritance, he had become hostile and that she had been advised by a relative to extend her trip and stay longer in Texas "in the hope that information about [her] inheritance would be revealed." Thus, Bouvier acknowledged that she was aware in 2014 that her inheritance was being hidden from her and that discussing the inheritance with Williams made him hostile.

In Bouvier's response to the traditional motion, she did not disagree with Williams's contentions as to which limitations periods applied to her claims, but she asserted that the limitations periods should be tolled because she had been "unable to obtain full information regarding [his] actions until recently." As evidence, she purportedly attached her own affidavit, "[d]ocumentary [e]vidence illustrating the ongoing nature of the harm" she had suffered, and "[r]elevant [c]orrespondence and [r]ecords showing the timeline of [her] discovery of [Williams's] conduct." However, nothing was attached to the response.

In Bouvier's response to the no-evidence motion, she argued among other things that her evidence demonstrated that Williams had concealed material facts regarding Ezelle's estate; that he and the other defendants had knowingly withheld material estate documents; that the defendants had refused to provide an accurate accounting of the estate's assets; and that Williams had engaged in intimidation to deter her from pursuing her inheritance. She further asserted that "intimidation and coercion" and "fraudulent concealment" were valid causes of action, but in support of

that statement, she cited cases discussing doctrines that defeat a limitations defense. *See Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983); *Doe v. Roman Cath. Archdiocese of Galveston-Hous. ex rel. Dinardo*, 362 S.W.3d 803, 811 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

Bouvier attached no evidence to that response either, although she included at the end of the response an "affidavit"—a paragraph averring that "the facts contained in this Response are true and correct to the best of [her] knowledge." *See Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 818 (Tex. 2021) (recognizing general rule that a party's own pleadings, even if sworn or verified, are not summary judgment evidence). The response did not explain how Williams had prevented her from pursuing legal action to claim an inheritance and did not address his evidence indicating that she had known no later than 2014 that Ezelle was her mother and that she was due an inheritance from Ezelle.

Bouvier then filed another response to which she attached no evidence. That response stated that she had filed a motion to compel DNA testing under Texas Rule of Civil Procedure 204.1 and that the outcome of the testing was "pivotal to determining [her] standing as a rightful heir to the late Ezelle Williams," and she argued that the pending motion demonstrated unresolved material facts related to her standing and inheritance rights. She filed this response three days before the summary judgment hearing.

By separate orders, the trial court granted Williams's summary judgment motions "in every particular" and ordered that judgment was granted in favor of Williams on all of Bouvier's claims against him.[6] Trial on Bouvier's remaining claims was set for January 14, 2025, but Bouvier did not appear for trial. The trial court noted that Bouvier had engaged in "a flurry of activity . . . [in the previous] week regarding various motions that ha[d] been filed," but "[s]he did not ask for a hearing on any of those matters, including pursuant to [the] local rules, a late-filed motion for continuance." The court thus called the case for trial, found that Bouvier had failed to meet her burden of proof "since she [wa]s not [t]here to put on any evidence," and dismissed the remaining claims. The trial court signed a take-nothing judgment dismissing Bouvier's claims with prejudice.[7]

Bouvier filed a "Motion to Reconsider and Vacate Judgment." She asserted that she had missed the trial because of "January weather conditions, particularly in Massachusetts" where she lived, which "caused severe delays in travel." She provided no further details. She also asserted that the discovery process "remain[ed]

---

[6]Regarding Bouvier's claim for "intimidation and coercion," the trial court construed it as a claim for assault or intentional infliction of emotional distress, a ruling about which Bouvier does not complain on appeal.

[7]Bouvier raises no issues or arguments challenging the trial court's take-nothing judgment as to her claims against Thompson and Shofu, and we affirm the judgment as to those claims.

incomplete." The motion was not verified and did not attach an affidavit or any other evidence. The motion was overruled by operation of law.

## Standard of Review

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) (citing *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)).

## Discussion

## I. DNA testing

Bouvier argues in her first issue that the trial court abused its discretion by denying her motion to compel DNA testing[8] and that the court's refusal to allow DNA testing "foreclose[ed] development of dispositive facts." The record does not indicate that Bouvier set the motion for a hearing, *see Nathan v. USAA Gen. Indem.*, No. 05-23-00106-CV, 2024 WL 1925864, at *3 (Tex. App.—Dallas May 2, 2024, no pet.), and does not contain any trial court order denying her motion or any objection by Bouvier complaining of the trial court's failure to rule on it. Consequently, she has

---

[8]Bouvier's motion was not included in the clerk's record, but Williams's brief recognizes that one was filed.

not preserved her complaint. *See* Tex. R. App. P. 33.1. Further, Bouvier fails to explain how DNA testing would have precluded summary judgment when Williams's traditional motion asserted that limitations barred her claims regardless of the truth of her allegations. *See* Tex. R. App. P. 38.1; *Tex. State Univ. v. Tanner*, 689 S.W.3d 292, 296 (Tex. 2024) (noting that limitations is an affirmative defense that, if proven, will lead to a take-nothing judgment); *Ferrer v. Almanza*, 667 S.W.3d 735, 738 (Tex. 2023) (noting that statutes of limitations "requir[e] a person to bring suit within a specified time after the cause of action accrues").

Bouvier also argues under this issue that Williams "offered only a birth certificate [that] the Vital Statistics office deemed invalid." We assume that she refers to the copy of her birth certificate that Williams attached to his traditional summary judgment motion, although she directs us to no evidence that the birth certificate is invalid. As noted, the trial court granted summary judgment in part based on the applicable statutes of limitations, and Bouvier does not explain how the birth certificate's validity is relevant to the disposition of her claims on that ground.

In Bouvier's reply brief, she argues that "summary judgment was premature because standing ha[d] not been resolved" and that "[b]y granting summary judgment before addressing [her] request for DNA testing, the trial court prevented [her] from establishing the very basis of her claims." But Williams did not challenge Bouvier's standing, and the trial court's disposition of her claims on limitations grounds did not turn on how Bouvier was related to Williams and the other defendants. Thus, DNA

11

testing would not have affected the trial court's disposition of her claims against Williams. We overrule Bouvier's first issue.

## II. No-evidence motion

In her second issue, Bouvier asserts that the trial court erred by denying her no-evidence motion. The record does not reflect that she moved for summary judgment. The trial court could not have denied—and therefore erred by denying—a motion that was never filed. *Cf. Gomez Acosta v. Falvey*, 594 S.W.3d 386, 396 (Tex. App.—El Paso 2019, no pet.) (holding trial court did not err by not acting on motion for sanctions when motion was never presented to trial court). If Bouvier filed such a motion, she had the burden of ensuring that the appellate record included it. *See Cole v. Cole*, No. 02-25-00229-CV, 2026 WL 478940, at *6 (Tex. App.—Fort Worth Feb. 19, 2026, no pet. h.) (quoting *Huston v. United Parcel Serv., Inc.*, 434 S.W.3d 630, 636 (Tex. App.—Houston [1st Dist.] 2014, pet. denied), and citing *Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990)). We overrule Bouvier's second issue.

## III. Statute of limitations

In Bouvier's third issue, she argues that the relevant statutes of limitations do not bar relief "where the court declined to allow the DNA testing necessary to develop the dispositive facts." Bouvier does not dispute that Williams's traditional motion had cited the correct statutes of limitations that applied to her claims. She also does not challenge the evidence supporting his motion. But she asserts that the discovery rule and equitable tolling prevented limitations from applying to extinguish

her claims because "essential scientific evidence"—results of DNA testing—"has been withheld or made unavailable." In support, she cites two federal cases. *See Gutierrez v. Saenz*, 606 U.S. 305, 308, 145 S. Ct. 2258, 2262 (2025); *Reed v. Goertz*, 598 U.S. 230, 232, 143 S. Ct. 955, 959 (2023).

In each case, the plaintiff asserted a claim under 42 U.S.C. § 1983 based on the denial of DNA testing related to his criminal conviction. *Gutierrez*, 606 U.S. at 308, 145 S. Ct. at 2262; *Reed*, 598 U.S. at 232, 143 S. Ct. at 959. Those cases are not binding or relevant authority in this proceeding in state court. *See Kafi, Inc. v. Nationstar Mortg., LLC*, No. 14-23-00674-CV, 2025 WL 3101379, at *11 (Tex. App.—Houston [14th Dist.] Nov. 6, 2025, no pet.). Moreover, they do not discuss the discovery rule or equitable tolling; *Reed* addresses when the statute of limitations begins to run on a § 1983 claim for denial of postconviction DNA testing, 598 U.S. at 236, 143 S. Ct. at 961 (concluding that limitations begin to run when state litigation pursuing the testing ends), and *Gutierrez* does not discuss limitations at all, 606 U.S. at 308–21, 145 S. Ct. at 2262–69. Bouvier cites no applicable authority to support her argument that a statute of limitations cannot apply to her claims because she requested DNA testing. *See* Tex. R. App. P. 38.1(i). Moreover, as noted above, the trial court's disposition of her claims on limitations grounds did not turn on how Bouvier was related to Williams and the other defendants, and thus DNA testing would have had no effect on the outcome.

Although Bouvier's brief references the discovery rule and equitable tolling, it does not discuss when those defenses generally apply or what evidence in the record

raised a fact issue on their application in this case. *See Est. of Ewers*, 695 S.W.3d 603, 620 (Tex. App.—Houston [1st Dist.] 2024, no pet.) (op. on reh'g) (stating that the discovery rule applies when the injury is inherently undiscoverable); *Bailey v. Gardner*, 154 S.W.3d 917, 920 (Tex. App.—Dallas 2005, no pet.) (discussing equitable tolling); *see also Alvarado v. The Abijah Grp., Inc.*, No. 03-13-00060-CV, 2015 WL 4603542, at *5 (Tex. App.—Austin July 29, 2015, no pet.) (applying equitable tolling "in cases where a defendant's actions—unmixed with any want of diligence on the plaintiff's part—induced the plaintiff to not bring a timely suit on a claim the plaintiff knew he possessed against the defendant"). The brief also does not address Williams's summary judgment evidence indicating that she was aware as early as 2014 that Ezelle had left her an inheritance that was being kept from her,[9] nor does it explain how he or another party induced her into letting the limitations period run or tell us what record evidence raises a fact issue on the matter, and we have found none. *See* Tex. R. App. P. 38.1(i). In summary, Bouvier does not explain on appeal how any defense to limitations applied to her claims or what summary judgment evidence raised a fact issue as to their applicability, and she has therefore waived any such argument. *See id.*; *Lon Smith & Assocs., Inc. v. Key*, 527 S.W.3d 604, 640 n.42 (Tex. App.—Fort Worth

---

[9]Because Williams's summary judgment evidence established Bouvier's knowledge of her injury no later than 2014, Bouvier had the burden to "raise a fact issue in avoidance of limitations to escape summary judgment." *Live Sys., LLC v. Hartford Fire Ins. Co.*, No. 02-23-00238-CV, 2024 WL 190727, at *2 (Tex. App.—Fort Worth Jan. 18, 2024, no pet.).

2017, pet. denied) (noting long-standing rule that error may be waived through inadequate briefing).

In Bouvier's reply brief, she argues that the trial court granted summary judgment without allowing meaningful discovery. Other than DNA testing, she does not tell us what further discovery she would have pursued if allowed, and she does not explain how that discovery would raise a fact issue relevant to the applicable statutes of limitations. *See* Tex. R. App. P. 38.1(i); *Lon Smith*, 527 S.W.3d at 640 n.42. Further, she raises this argument for the first time in her reply brief, and we therefore need not consider it. *See In re C.F.*, 576 S.W.3d 761, 772 (Tex. App.—Fort Worth 2019, no pet.). We overrule Bouvier's third issue.

## Conclusion

Having overruled Bouvier's three issues, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: May 7, 2026

15