**Opinion issued August 16, 2016.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00216-CV

————————————

**VICTOR S. ELGOHARY, REPRESENTATIVELY ON BEHALF OF NOMINAL DEFENDANT LAKES ON ELDRIDGE NORTH COMMUNITY ASSOCIATION, INC., Appellant**

**V.**

**LAKES ON ELDRIDGE NORTH COMMUNITY ASSOCIATION, INC.; REALMANAGE, LLC; DARLA KITCHEN; DON BYRNES; MICHAEL ECKLUND; LAURA VASALLO LEE; JOHN KANE; JULIE ANN BENNETT; RICK HAWTHORNE; CARA DAVIS; CHRISTI KELLER; JIM FLANARY; JILL RICHARDSON, Appellees**

**\* \* \* \***

**LAKES ON ELDRIDGE NORTH COMMUNITY ASSOCIATION, INC.; REALMANAGE, LLC; DARLA KITCHEN; DON BYRNES; MICHAEL ECKLUND; LAURA VASALLO LEE; JOHN KANE; JULIE ANN BENNETT; RICK HAWTHORNE; CARA DAVIS; CHRISTI KELLER; JIM FLANARY; JILL RICHARDSON, Appellants**

**V.**

**VICTOR S. ELGOHARY, REPRESENTATIVELY ON BEHALF OF NOMINAL DEFENDANT LAKES ON ELDRIDGE NORTH COMMUNITY ASSOCIATION, INC., Appellee**

---

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Case No. 2013-17221**

---

**MEMORANDUM OPINION**

On this day, the Court considered appellants' motions for rehearing and reconsideration en banc. The motions were DENIED. However, we withdraw our previous opinion of December 17, 2015, and issue this opinion in its stead. Our judgment of December 17, 2015 remains unchanged.

In this dispute between a homeowner and his neighborhood homeowners association, we consider whether the trial court erred in (1) granting a no-evidence summary judgment for the homeowners association, (2) granting a traditional summary judgment for the homeowners association; (3) granting the homeowners association's request for declaratory relief; (4) limiting discovery; and (5) awarding attorney's fees to the homeowners association. In the homeowners association's appeal, we consider whether the trial court erred by reducing the amount of attorney's fees awarded to the homeowners association.

# BACKGROUND

On March 22, 2013, after the Lakes on Eldridge North Community Association, Inc. ["the Association"] voted to change the usage requirements at the rear restricted access gate of the subdivision, Victor Elgohary, a resident of the subdivision, sued 10 directors and former directors of the Association ["the Directors"], RealManage, LLC, the Association's managing agent, and Christi Keller, the Association's managing agent and an employee of RealManage. Specifically, Elgohary alleged that the Association's "board of directors has fundamentally changed the operation and use of the restricted access gate . . . [and] has not only enacted new limited times of operation and reduced the vehicle size restriction, but it has made resident access into or out of the northern access point of the subdivision impossible unless utilizing a motor vehicle."

Elgohary brought both individual and derivative claims, including breach of contract, breach of fiduciary duty, negligence, conversion, and theft, asserting that the Directors and RealManage had misappropriated funds and made expenditures that were inconsistent with the Association's non-profit status and its charter. Elgohary also brought individual claims of trespass and breach of contract against the Association and the Directors, and sought injunctive relief to prohibit the closing of the neighborhood's entrance and the placement of certain signs in the

3

subdivision. Elgohary later amended his petition to include a request for sanctions from the Association's counsel, Neil McLaurin and Walter Spears.

The Association counterclaimed, seeking a declaratory judgment that the Association's Deed Restrictions (1) permitted the Association to regulate the access gate to the neighborhood, and (2) did not prohibit the Association from placing signs on subdivision property. The Association also sought attorney's fees from Elgohary.

On August 5, 2013, Elgohary served defendants with several hundred discovery requests related to many different issues. On August 21, 2013, all defendants filed a hybrid no-evidence and traditional motion for summary judgment. Defendants also filed objections and a motion for protection from Elgohary's discovery requests; they also asked that the trial court stay their discovery responses until it had ruled on their summary judgment motions. Both the motions for summary judgment and the motions for protection from discovery were set for September 16, 2013. Elgohary filed responses to both motions before the September 16 hearing date.

However, at the hearing on September 16, 2013, Elgohary complained that he had not received proper notice of the summary judgment motions. Specifically, he complained that although he had received the motion by email, he did not receive service as required by TEX. R. CIV. P. 166a(c). After verifying that

4

Elgohary had received actual notice of the motion, the trial court asked both parties if resetting the summary judgment motion for 21-days from the original hearing date would be sufficient. He also indicated that he would reset the hearing on the motion for protection after the summary judgment's rescheduled hearing date. Neither side objected to the trial court's rescheduled hearings. Similarly, Elgohary did not file a Motion for Continuance.

On September 30, 2013, Elgohary filed an Amended Response to Defendants Traditional and No Evidence Motion for Summary Judgment, supported by his own affidavit.

On October 12, 2013, more than 21 days after the originally scheduled summary judgment hearing, the trial court granted the defendants' motion for summary judgment. The order did not specify whether the no-evidence motion or the traditional motion was granted. The trial court did not rule on the defendants' motion for protection at that time. However, on October 14, the trial court held a hearing on the defendants' motion for protection, at which time the trial court stated that the motion was now moot because the trial court had granted the summary judgment.

The Association's declaratory judgment claims were tried to the bench on March 13, 2014. After trial, the trial court signed a final judgment declaring that (1) "the Association is permitted to regulate the use of the West Little York

5

entry/exit[;]" (2) "the Association is not prohibited from placing signs on Association property, so long as said signs do not relate to the construction, improvement, alteration, or addition to Lots within the Subdivision; and that (3) the Association "shall have and recover from Counter-Defendant Victor S. Elgohary $20,000 in reasonable and necessary attorney's fees through the trial of this case[;]", plus attorney's fees through appeal, costs, and interest.

## PROPRIETY OF SUMMARY JUDGMENT

In issue one, Elgohary contends the trial court erred in granting defendants' no evidence motion for summary judgment. In issue two, Elgohary contends the trial court erred in granting the defendants' traditional motion for summary judgment.

### Standard of Review

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When a summary judgment does not specify the grounds on which it was granted, we will affirm the judgment if any one of the theories advanced in the motion is meritorious. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

After adequate time for discovery, a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim. TEX. R. CIV. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex.

6

App.—Houston [1st Dist.] 2009, pet. denied). Once the movant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to raise a fact issue on the challenged elements. *Id.*

In a traditional summary judgment motion, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). In reviewing a traditional summary judgment, we must indulge every reasonable inference in favor of the nonmovant, take all evidence favorable to the nonmovant as true, and resolve any doubts in favor of the nonmovant. *Valence*, 164 S.W.3d at 661. A defendant who moves for traditional summary judgment on the plaintiff's claim must conclusively disprove at least one element of the plaintiff's cause of action. *Little v. Tex. Dep't of Crim. Justice*, 148 S.W.3d 374, 381 (Tex. 2004).

**No-Evidence Summary Judgment**

Elgohary brings three procedural challenges to the trial court's grant of no-evidence summary judgment. First, he argues that the defendant's waived the no-evidence portion of their summary judgment motion. Second, he contends that there was not adequate time for discovery because at the time it was granted, the defendants had not responded to his discovery requests, and that he had five more months to complete discovery under the discovery order entered by the trial court.

7

Third, Elgohary contends that the trial court erred in granting summary judgment because he did not have 21-days' notice of the summary judgment hearing. Elgohary does not argue that he raised a fact issue as to each of the elements challenged in the no-evidence motion. We will address each argument respectively.

*Waiver of No-Evidence Motion*

In its reply to Elgohary's Amended Response to Defendant's Traditional and No Evidence Motion For Summary Judgment, the Defendant's stated:

> Defendants seek only a traditional motion for summary judgment on their arguments and authorities concerning Association governing documents and statutes which provide immunity to them.

On appeal, Elgohary argues that this statement in the Defendant's reply is a judicial admission that they were waiving their no-evidence motion. We disagree.

The elements of a judicial admission are: (1) a statement made during the course of a judicial proceeding; (2) that is contrary to an essential fact or defense asserted by the person making the admission; (3) that is deliberate, clear, and unequivocal; (4) that, if given conclusive effect, would be consistent with public policy; and (5) that is not destructive of the opposing party's theory of recovery. *Bliss & Glennon, Inc. v. Ashley*, 420 S.W.3d 379, 393 (Tex. App.—Houston [1st Dist.] 2014, no pet.). The statement referenced above is not a deliberate, clear, and unequivocal waiver of the Defendant's no-evidence motion for summary

judgment. To the contrary, it points out only that the portion of Defendants' motion that relies on the Association's governing documents and immunity statutes are traditional summary judgment grounds, not no-evidence grounds. The Defendants' attempt to clarify that in its reply cannot be a deliberate, clear and unequivocal waiver of its no-evidence grounds. Indeed, it does not mention its no-evidence motion at all.

Thus, we reject Elgohary's first ground for defeating the no-evidence motion for summary judgment.

*No Adequate Time For Discovery*

When a party argues it has not had an adequate opportunity for discovery before a no-evidence summary-judgment hearing, that party must file an affidavit explaining the need for further discovery or a verified motion for continuance. TEX. R. CIV. P. 166a(g); *See Joe*, 145 S.W.3d at 161. The affidavit must explain why the continuance is necessary; conclusory allegations are insufficient. *Carter v. MacFadyen*, 93 S.W.3d 307, 310 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). We generally consider the following nonexclusive factors in determining whether the trial court abused its discretion: (1) the nature of the cause of action; (2) the nature of the evidence necessary to controvert the no-evidence motion; (3) the length of time the case has been active in the trial court; (4) the amount of time the no-evidence motion has been on file; (5) whether the movant has requested

stricter time deadlines for discovery; (6) the amount of discovery that has already taken place; and (7) whether the discovery deadlines that are in place are specific or vague. *Madison v. Willimson*, 241 S.W.3d 145, 155 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *see also Joe*, 145 S.W.3d at 161. When reviewing a trial court's order denying a motion for continuance, we consider whether the trial court committed a clear abuse of discretion on a case-by-case basis. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800–01 (Tex. 2002). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.*

Here, Elgohary did not file a sworn motion for continuance. He did, however, argue in his *unsworn* Amended Response to Defendant's Traditional and No Evidence Motion For Summary Judgment that he did not have adequate time for discovery that that "[d]epositions are also necessary in this case in order for Plaintiffs to controvert Defendants' good faith assertions and presumptions of acting in a reasonable way with regards to the restrictive covenants," and that "[s]ince the evidence needed to controvert the motion for summary judgment and defend the counterclaims has not been fully developed, summary judgment would be premature and should be continued or denied." These unsworn allegations are insufficient to carry Elgohary's burden to show an inadequate time for discovery. *See Joe*, 145 S.W.3d at 161 (requiring party arguing inadequate time for discovery

to file affidavit or verified motion for continuance).  Elgohary did, however, attach an affidavit to his response that *is* sworn, thus we look to the evidence presented in the affidavit to determine whether Elgohary carried his burden.

In *Doe v. Roman Catholic Archdiocese of Galveston–Houston*, 362 S.W.3d 803, 811 (Tex. App.—Houston [14th Dist.] 2012, no pet.), the plaintiff alleging lack of adequate time for discovery filed two affidavits in support of his motion for continuance.  The first affidavit alleged that the case had been on file for less than four months, that "additional time is needed to conduct full discovery[,]" and that "the information and items produced in discovery will assist Plaintiff in establishing Plaintiff's claims which defer, toll, or otherwise eliminate the statute of limitations defense, or at a minimum, will create a fact issue on this affirmative defense for a jury to decide[.]"  *Id.* at 811.  The second affidavit contained similar allegations, plus further specified "the particular documents and depositions [the plaintiff] wanted," claiming that the discovery would help him "establish or support [his] claims, and particularly, claims . . . which defeat Defendant's Motions or limitations defense."  *Id.*  The court noted that the plaintiff's affidavits "did not explain how [the evidence sought through discovery] would enable him to defeat the defendants' asserted affirmative defense of limitations."  In so holding, the court stated:

> Indeed, in neither motion does Doe identify or explain what relevant facts he expected to discover that would enable him to defeat or raise

a fact issue on the affirmative defense of limitations. . . . Although Doe generally asserts that the discovery he sought would support doctrines which would 'defer, toll, or eliminate' the statute of limitations . . . he did not discuss the elements of these doctrines or explain how they would apply on these facts. Because Doe failed to explain how the additional discovery he sought was in any way material, the trial court did not abuse its discretion in denying the motions for continuance.

*Id.* at 812; *see also Madison v. Williamson*, 241 S.W.3d 145, 155–56 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (no abuse of discretion when nonmovant "made no effort to specify the additional evidence she needed to respond to the motion"); *Carter v. MacFadyen*, 93 S.W.3d 307, 311 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (same when response did not indicate "what specific discovery needed to be completed"); *Rest. Teams Int'l, Inc. v. MG Secs. Corp.*, 95 S.W.3d 336, 341 (Tex. App.—Dallas 2002, no pet.) (finding trial court did not abuse its discretion by granting no-evidence motion for summary judgment when case had been on file for seven months, but before discovery period ended; appellants' motion for continuance did not explain their failure to present evidence opposing summary judgment motion or explain how they attempted to participate in discovery while case was pending).

Elgohary's affidavit provides even less information than that provided by the plaintiff in *Doe*. In his affidavit, Elgohary alleges that he "personally served discovery of interrogatories and production of documents on Defendants by hand delivery on August 5, 2013 at the offices of Hays, McConn, Rice & Pickering."

He then avers that Defendants objected to his discovery requests as "all overbroad," and that, despite his offers to "deal with and discuss objections as they applied to each individual request for production and discovery," Defendants instead filed a motion for protection from discovery. Elgohary's affidavit does not, however, state which of his discovery requests were necessary to rebut the no-evidence motion for summary judgment or how the information sought would raise fact issues precluding summary judgment.

Regarding Elgohary's argument that the discovery period did not expire until January 24, 2014, some three months after the summary judgment was granted, we note that "Rule 166a(i) begins with the phrase, '[a]fter adequate time for discovery' not 'after a pretrial scheduling discovery period has concluded,' and therefore, it does not support appellant's argument that a trial court abused its discretion in granting no-evidence summary judgment during the discovery period." *Lucio v. John G. & Marial Stella Kenedy Mem 7 Found.*, 298 S.W.3d 663, 670 (Tex. App.—Corpus Christi 2009, pet. denied).

Based on the lack of information provided in Elgohary's affidavit, we cannot conclude that the trial court abused its discretion in ruling on the no-evidence motion for summary judgment. "The mere fact that a trial court decided an issue in a manner differently than an appellate court would under similar circumstances

does not establish an abuse of discretion." *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, no pet.).

Thus, we reject Elgohary's second ground for defeating the no-evidence motion for summary judgment.

*Notice of Summary Judgment Hearing*

In issue two regarding the traditional summary judgment, Elgohary argues that he did not have 21 days' notice before the summary judgment hearing. Because this argument applies equally to the no-evidence motion for summary judgment, we address it here.

Elgohary contends that the trial court erred in granting the motions for summary judgment "because the Defendants did not comply with filing and service rules under TEX. R. CIV. P. 21, TEX. R. CIV. P. 21a, and TEX. R. CIV. P. 166a." We disagree.

Proof of actual notice will establish compliance with Rule 21a. *See Goforth v. Bradshaw*, 296 S.W.3d 849, 854 (Tex. App.—Texarkana 2009, no pet.) (stating that purpose of rule 21a "is to achieve actual notice and to set up presumptions to use in disputes about whether notice was achieved"; determining that even though report was served on party by regular mail, which is not authorized by rule 21a, there was "acknowledged" and "actual delivery" of report); *Netherland v. Wittner*, 662 S.W.2d 786, 787 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.)

(holding that when appellant acknowledged timely receipt of notice by regular mail, appellant appeared and fully participated at trial, and appellant did not claim harm arising from notice, appellee had fulfilled primary purposes of service under rule 21a).

Here, any error in giving less than 21-days' notice of the summary judgment submission was cured when the trial court reset the submission date for 21 days beyond the original submission date, thereby giving Elgohary actual notice of the summary judgments' submission and additional time to respond.

Elgohary also challenges the summary judgment on the basis that not all of the individual defendants were included in the motion for summary judgment and the defendants did not move for summary judgment on his claims for sanctions under TEX. CIV. PRAC. & REM. CODE § 10 and TEX. R. CIV. P. 13. Specifically, Elgohary contends that the trial court erred in dismissing his claims "against counsel for the Association Walter Spears and Neil McLaurin without a properly noticed summary judgment hearing or motion for summary judgment," and erred in dismissing his "sanctions claims against the Association, Defendant Directors, RealManage, and Keller without a timely noticed submission for summary judgment."

First, we note that Spears and McLaurin were never served, thus there was no need for them to file a motion for summary judgment. Their absence from the

final judgment does not mean that it did not dispose of all parties and all claims because they were never made parties to the suit. Second, the record shows that Elgohary's sanctions requests were disposed of by separate order entered after the summary judgment was granted. This was not error. Requests for sanctions are not independent causes of action. *See Mantri v. Bergman*, 153 S.W.3d 715, 717–18 (Tex. App.—Dallas 2005, pet. denied) ("[T]here is no precedent in Texas for treating motions for sanctions as independent causes of action.").

Thus, we reject Elgohary's third ground for defeating the no-evidence motion for summary judgment.

Having disposed of both of Elgohary's challenges to the no-evidence summary judgment, we conclude that the trial court did not err in granting the defendants' no-evidence summary judgment.

Accordingly, we overrule issue one.

**Traditional Summary Judgment**

In light of our disposition of the no-evidence summary judgment, we need not address Elgohary's second issue regarding the propriety of the traditional summary judgment, and decline to do so.

## DECLARATORY JUDGMENT

In issue three, Elgohary contends the trial court erred in rendering judgment on the Association's declaratory judgment claims because (1) "the lower court

erred in not abating the Association's claims by requiring the joinder of all homeowners and other necessary parties in the declaratory action[;]" (2) "the Covenant Conditions and Restrictions prohibit signs in the Subdivision[;] and (3) "the Association's request for a declaration that the Association is permitted to regulate the use of the West Little York Entry/Exit is not a justiciable controversy as presented[.]" We address each argument respectively.

**Abatement**

Elgohary filed a motion to abate the Association's counterclaim for declaratory relief, arguing that it was necessary to join all homeowners in Lakes on Eldridge North ["LOEN"] before proceeding to judgment on the Association's counterclaim. The trial court denied the motion. Elgohary contends this was reversible error.

This Court considered a similar, but slightly different issue in *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 697-98 (Tex. App.—Houston [1st Dist.] 2007, no pet.). In *Indian Beach*, the homeowners' association brought suit against a homeowner, seeking an injunction that his fence violated deed restrictions. *Id.* at 690. The homeowner counterclaimed, seeking a declaratory judgment that its fence was in compliance with the deed restrictions. *Id.* On appeal, the homeowners' association claimed that the trial court *lacked jurisdiction* to render a declaratory judgment because all other homeowners were not joined as

17

necessary parties. This Court held that the failure to join all property owners affected by a restrictive covenant in a declaratory judgment action did not deprive the trial court of jurisdiction to enter the declaratory judgment because nothing prevented the trial court from rendering complete relief between the parties, and because the declaratory judgment did not prejudice the rights of any person not a party to the proceeding. *Id*. at 698 (citing *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 162 (Tex. 2004) and *Wilchester West Concerned Homeowners LDEF, Inc. v. Wilchester West Fund, Inc*., 177 S.W.3d 552, 559 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)). This Court also noted that, had the homeowners' association been concerned about the possibility of inconsistent judgments, it could have asked the trial court to abate to join the absent homeowners. *Id.*

The issue in this case is not jurisdiction, but whether the trial court committed reversible error by refusing Elgohary's request to abate so that the absent homeowners could be joined. Indeed, courts have held that all homeowners should be joined when a declaratory judgment would affect the property interests of all real property owners in the community. *See Dahl v. Hartman*, 14 S.W.3d 434, 437 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *April Sound Mgmt. Corp. v. Concerned Prop. Owners for April Sound, Inc.*, 153 S.W.3d 519, 521 (Tex. App.—Amarillo 2004, no pet.).

Elgohary and the Association dispute whether the declaratory judgment would affect the property interest of all real property owners in the community. However, we need not decide the issue because, under the facts presented here, error, if any, in denying Elgohary's requested abatement, is harmless. *See* TEX. R. APP. P. 44.1(a). The purpose of TEX. CIV. PRAC. & REM. CODE ANN. §37.006(a) (West 2008), which requires joinder in a declaratory judgment proceeding of "all persons who have or claim any interest that would be affected by the declaration," is to avoid a multiplicity of suits. *Dahl*, 14 S.W.3d at 436. Elgohary, however, cannot be harmed by the possibility of multiple suits, only the Association can. As noted by this Court in *Indian Beach*, "nothing prevented the trial court from rendering complete relief between the parties to the suit." 222 S.W.3d at 698. As such, we conclude that Elgohary has failed to show that the trial court's error in denying his requested abatement "probably caused the rendition of an improper judgment" as to him. *See* TEX. R. APP. P. 44.1(a).

**Construction of Association's Governing Documents**

Article V of the Association's Declaration of Covenants, Conditions & Restrictions, entitled Protective Covenants and Restrictions, as follows:

Section 1. <u>Covenants Applicable</u>. The following provisions shall be applicable to any and all construction, improvement, alteration, or addition to the Lots.

b. No sign, including political signs, advertisement, billboard or advertising structure of any kind shall be displayed, maintained

or placed in the public view on or from any part of the Property or on any Lot, except signs temporarily used by Declarant or any Owner on a Lot, of not more than six (6) square feet, advertising the Lot for sale or rent, or signs of architects and builders during the period of construction and sale of improvements on any Lot.

After trial on the merits, the trial court entered a declaratory judgment stating:

It is therefore, . . . ORDERED, ADJUDGED and DECREED that, pursuant to the Uniform Declaratory Judgments Act, the Association is not prohibited from placing signs on Association property, so long as said sign to not relate to the construction, improvement, alteration, or addition to Lots within the Subdivision.

Elgohary contends the trial court erred in rendering this declaratory judgment, arguing that "the Covenants Conditions and Restrictions prohibit signs in the subdivision." Specifically, Elgohary contends that the only signs allowed in the neighborhood were "for sale signs" and/or architects and builders signs during construction. Elgohary's position was that the Association's signs explaining the hours and use of the restricted access gate were prohibited, and, indeed, that *all* other signs, were prohibited. We construe Elgohary's issue to be a challenge to the trial court's interpretation of the restrictive covenant as a matter of law.

*Standard of Review and Applicable Law*

The Association's Declaration of Covenants, Conditions & Restrictions contains restrictive covenants concerning real property. *See* TEX. PROP. CODE ANN. § 202.001(4) (Vernon 2014) (defining restrictive covenant). Restrictive covenants

20

are subject to the general rules of contract construction. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998); *Bank United v. Greenway Improvement Ass'n*, 6 S.W.3d 705, 707 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). As when interpreting any contract, the court's primary duty in construing a restrictive covenant is to ascertain the drafter's intent from the instrument's language. *Bank United*, 6 S.W.3d at 708. In ascertaining the drafter's intent, we must examine the covenant as a whole in light of the circumstances present when the covenant was made. *Pilarcik*, 966 S.W.2d at 478. We must give a restrictive covenant's words and phrases their commonly accepted meaning. *Truong v. City of Houston*, 99 S.W.3d 204, 214 (Tex. App.—Houston [1st Dist.] 2002, no pet.). We review a trial court's interpretation of a restrictive covenant de novo. *Air Park–Dallas Zoning Committee v. Crow–Billingsley Airpark, Ltd.*, 109 S.W.3d 900, 909 (Tex.App.—Dallas 2003, no pet.).

Whether restrictive covenants are ambiguous is a matter of law for the court to decide. *Pilarcik*, 966 S.W.2d at 478; *Samms v. Autumn Run Cmty. Improvement Ass'n, Inc.*, 23 S.W.3d 398, 402 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). A covenant is unambiguous if, after appropriate rules of construction have been applied, the covenant can be given a definite or certain legal meaning. *Pilarcik*, 966 S.W.2d at 478; *Pitman v. Lightfoot*, 937 S.W.2d 496, 517 (Tex. App.—San Antonio 1996, writ denied) (holding same concerning contracts

21

generally). In contrast, if, after appropriate rules of construction have been applied, a covenant is susceptible of more than one reasonable interpretation, the covenant is ambiguous. *Pilarcik*, 966 S.W.2d at 478; *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (1951).

*Analysis*

In construing a restrictive covenant, a court's primary task is to determine the drafter's intent and to liberally construe the language of the restrictions to give effect to their purposes and intent and to harmonize all of the provisions so that none are rendered meaningless. *Rakowski v. Committee to Protect Clear Creek Village Homeowners' Rights* 252 S.W.3d 673 (Tex. App.—Houston [14th Dist.] 1997, pet. denied).

Here, if we were to accept Elgohary's assertion that, as a matter of law, the restrictive covenant prohibited all signs other than those specifically permitted, it would render the phrase applying the covenants to "any and all construction, improvement, alteration, or addition to the Lots" meaningless by effectively eliminating that verbiage. Further, adopting Elgohary's interpretation of the restrictive covenant would lead to an absurd result, i.e., the prohibition of *all signs* by *any party*, including the Association, in the neighborhood's common areas. Under Elgohary's interpretation, the Association could make rules about use of common areas, but could not disseminate those rules through the use of any signs.

We cannot interpret a contract so as to produce an absurd result. *See Lane v. Travelers Indem. Co.*, 391 S.W.2d 399, 402 (Tex. 1965) (refusing to construe contract in manner that would lead to absurd results); *Avasthi & Assocs., Inc. v. Banik*, 343 S .W.3d 260, 264 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (declining to accept construction of contract that would produce absurd results because there was construction that would not produce absurd result).

Thus, we cannot say that the trial court erred as a matter of law when it rendered judgment declaring that the Association could place signs in the neighborhood as long as the signs did "not relate to the construction, improvement, alteration, or addition to Lots within the Subdivision."

**Justiciable Controversy**

Article 1, section 1.d. of the Association's Declaration of Covenants, Conditions & Restrictions defines "Common Areas" of the subdivision, and Article VIII, section 3(a) provides for "[t]he right of the Association to prescribe rules and regulating for the use, enjoyment, and maintenance of the Common Areas."  Based on these provisions, the Association sought by way of its counterclaim "a declaration from the Court that the Association is permitted to regulate the use of the [West Little York] entry/exit."

Elgohary's position was that that the Association was not permitted to regulate access to the subdivision from West Little York via Enclave Vista Lane

23

because there was an express easement on Enclave Vista Lane. The Association's position was that its regulation of access to Enclave Vista Lane from West Little York did not interfere with the express easement on Enclave Vista Lane because that street remained fully accessible to homeowners via another street, Sonora Canyon Lane, and that regulating access to one end of the street was permissible under section 3(a) of the Declaration of Covenants, Conditions & Restrictions as a regulation regarding the use of a common area.

After trial on the merits, the trial court entered the following declaratory judgment:

> It is therefore, . . . ORDERED, ADJUDGED and DECREED that, pursuant to the Uniform Declaratory Judgments Act, the Association is permitted to regulate the use of the West Little York entry/exit.

On appeal, Elgohary contends that the trial court erred in rendering this declaratory judgment because there was no justiciable controversy between the parties regarding this issue. Specifically, Elgohary states that "he has never disputed that the Association may regulate the gate for purposes of keeping it operation or to limit its use solely to those with remote controls registered in the Association's computer systems."

A declaratory judgment is appropriate only if a justiciable controversy exists concerning the rights and status of the parties and the controversy will be resolved by the declaration sought. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467

(Tex. 1995); *see also* TEX. CIV. PRAC. & REM.CODE § 37.002(b) (reflecting that the purpose of the Uniform Declaratory Judgments Act is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations"). For a justiciable controversy to exist, there must be a real and substantial controversy involving a genuine conflict of tangible interest and not merely a theoretical dispute. *Bonham State Bank*, 907 S.W.2d at 467. "A declaratory judgment action does not vest a court with the power to pass upon hypothetical or contingent situations, or to determine questions not then essential to the decision of an actual controversy, although such questions may in the future require adjudication." *Tex. Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 846 (Tex. App.—Austin 2002, pet. denied).

Here, the declaration that the Association sought—whether it could regulate the West Little York entry/access gate—was essential to resolution of the dispute between the Association and Elgohary, and, as it alleged in its counterclaim, "the relief the Association sought is greater in scope and concerns the underlying disagreement between the parties as to the interpretation of the Association's dedicatory instruments." Indeed, if the Association had no authority to regulate the West Little York entry/access gate at all, none of the actions it took, including those Elgohary now contends are permitted such as "keeping it operational" and "limit[ing] its use solely to those with remote controls, would be permissible. As

25

such, the trial court did not err by concluding that the Association's request for declaratory relief presented a justiciable controversy.

## Conclusion

Having decided that (1) there was no reversible error in the trial court's denial of Elgohary's motion to abate; (2) the Declaration of Covenants, Conditions & Restrictions did not prohibit the Association from placing signs in the neighborhood about the rules regarding access from West Little York; and (3) the Association's request for declaratory judgment presented a justiciable controversy, we overrule Elgohary's third issue.

## LITMITATION OF DISCOVERY

In issue four, Elgohary contends the trial court erred in granting the Defendant's protective order from discovery.

## Background

In August 2013, Elgohary served several hundred discovery requests on the Defendants. The Defendants filed a motion for protective order, which was set for a hearing on October 14, 2014. At the October 14 hearing for the protective order, the trial court indicated that the motion for protective order was moot because it had already granted the Defendants' Motion for Summary Judgment. This ruling is *not* the basis for Elgohary's issue on appeal.

After summary judgment was granted, discovery continued on the Association's remaining declaratory judgment claims. Elgohary served written discovery and deposition notices to the Association and certain directors, and also subpoenaed a former director, Michael Dach, who was not a party to the suit. The Defendants and Dach filed motions for protection from further discovery and seeking to quash all noticed depositions.

At a hearing on January 27, 2014, the trial court asked Elgohary why he needed the discovery, and he responded that it was necessary to determine whether the Association's and Directors' actions had been reasonable and taken in good faith. Defendants responded that no further discovery was needed because summary judgment had been granted on all of Elgohary's claims, which were based on reasonableness and good faith, and that the only claims remaining were their declaratory judgment claims, which required the interpretation of the Declaration of Covenants, Conditions & Restrictions, a question of law. The remaining issue, the Defendants argued, was not whether the Association's regulations were reasonable and done in good faith, but whether the Declaration of Covenants, Conditions & Restrictions permitted them to regulate the entry/exit at West Little York at all, a "more global declaratory judgment not specific to [Elgohary's] facts." The trial court agreed with the defendants and granted their

27

motions for protection. It is this ruling that Elgohary challenges in his fourth issue on appeal.

**Law and Analysis**

Elgohary argues that the trial court erred in limiting his discovery because the Defendants did not carry their burden to show that his requests were unduly burdensome. However, as made clear from the record of the hearing, the trial court did not limit discovery because it was burdensome, but because it was irrelevant to the remaining issues in the case.

Texas Rule of Civil Procedure 192.3 is entitled "Scope of Discovery" and provides, "In general, a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action . . . [and which] appears reasonably calculated to lead to the discovery of admissible evidence." TEX. R. CIV. P. 192.3(a); *Crown Central Petroleum Corp. v. Garcia*, 904 S.W.2d 125, 127 (Tex. 1995) (orig. proceeding). In discovery situations, the trial court is granted latitude in limiting or tailoring discovery. TEX. R. CIV. P. 192.4. Generally, a trial court should limit discovery methods to those which are more convenient, less burdensome, and less expensive, or when the burden or expense of the proposed discovery outweighs its likely benefit. *In re Alford Chevrolet–Geo*, 997 S.W.2d 173 (Tex. 1999) (orig. proceeding); TEX. R. CIV. P. 192.4. Discovery requests themselves must be reasonably tailored to matters

28

relevant to the case at issue. *In re Xeller*, 6 S.W.3d 618, 626 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding). Consequently, the trial court has broad discretion to limit discovery requests by time, place, and subject matter. *See Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex.1995) (orig. proceeding).

Here, the issues for which Elgohary sought discovery—reasonableness and good faith of the Association's and Directors' actions—had already been resolved against him by way of summary judgment. The only remaining issue involved the interpretation of the Association's Declaration of Covenants, Conditions & Restrictions. Since this issue was to be resolved as a matter of law based upon the language of the declarations, the trial court did not abuse its discretion by preventing Elgohary from conducting further discovery on issues that had no relevance to the upcoming trial.

We overrule issue four.

## ATTORNEY'S FEES

In the final judgment, the trial court ordered that the Association "shall have and recover from Counter-Defendant Victor S. Elogohary $20,000 in reasonable and necessary attorney's fees through the trial of this case[.]" In his fifth issue on appeal, Elgohary contends the trial court erred in awarding attorney's fees because (1) "the Association sought no damages or specific relief[,]" and (2) he did not receive timely notice of the billing statements that the Association entered into

29

evidence at trial in support of its attorney fee claim.  In its appeal, the Association contends the trial court erred in reducing its reasonable and necessary fees from $42,000 to $20,000.  We address each issue respectively.

**Attorney's Fees in the Absence of Damages or Specific Relief**

Elgohary contends that the attorney's fees cannot stand because "the Association sought no damages or specific relief from Elgohary," thus the fees, "even though supported by [the Association's attorney's testimony] cannot support such a high award since it is clearly out of proportion with the result [the Associations' attorneys] obtained on behalf of the Association."

Here, the Association sought and obtained relief pursuant to the Declaratory Judgment Act, which provides that "[i]n any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."  TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2015). There was no need for the Association to seek damages or injunctive relief in order to obtain attorney's fees pursuant to the statute.

**Timely Notice of Billing Statements**

At trial, when the Association's attorney offered his billing records into evidence, the following exchange took place:

[Trial Court]:  Any objection?

[Elgohary]:  I do have one objection.  And that was, again, this was one of the things I asked for in discovery that was quashed.

30

[Association's counsel]: Your Honor—

[Trial court]: Was it produced?

[Association's counsel]: Your Honor, we produced copies of our invoices to Mr. Elgohary along with all of [the] trial exhibits pursuant to the Court's trial preparation order. We also e-mailed copies of the invoices after the hearing, in which I told your Honor and Mr. Elgohary that we would give him the invoices. That was one of the conditions to Your Honor's ruling on discovery.

[Trial Court]: Overruled. You may proceed.

[Elgohary]: I would just add to the record that that was less than 30 days prior to trial.

[Trial court]: Okay.

[Elgohary]: That's what we objected to.

[Trial court]: Proceed.

. . . .

[Trial court]: Hang on. Mr. Elgohary, let me just state that the basis for my ruling is that I don't—I don't—based upon the types of records that are involved here and the types of cases and the claims that have been made, there's no unfair prejudice or surprise.

Rule 193.6 of the Texas Rules of Civil Procedure provides:

(a) *Exclusion of Evidence and Exceptions.* A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party, who was not timely identified, unless the court finds that:

(1) there was good cause for the failure to timely make, amend or supplement the discovery response; or

31

(2) the failure to timely make, amend or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

(b) *Burden of Establishing Exception*. The burden of establishing good cause or the lack of unfair surprise or unfair prejudice is on the party seeking to introduce the evidence or call the witness. A finding of good case or the lack of unfair prejudice must be supported by the record.

(c) *Continuance*. Even if the party seeking to introduce the evidence or call the witness fails to carry the burden under paragraph (b), the court may grant a continuance or temporarily postpone the trial to allow a response to be made amended, or supplemented, and to allow opposing parties to conduct discovery regarding any new information presented by that response.

TEX. R. CIV. P. 193.6. Rule 193.6's exclusion provision is automatic unless one of the exceptions applies. *See Fort Brown Villas III Condo. Ass'n v. Gillenwater*, 285 S.W.3d 879, 881 (Tex. 2009).

Here, the trial court found that the second exception applied, i.e., that Elgohary was not unfairly prejudiced or surprised by the exhibit containing the fee statements. Indeed, Elgohary does not argue how he was prejudiced, other than a conclusory statement in his brief that it prevented him "from making any reasonable cross examination of McLaurin's testimony regarding the reasonableness of his fees." And, the record supports the trial court's conclusion that Elgohary was not prejudiced. Contrary to his assertion that "this was one of

32

the things I asked for in discovery that was quashed," the record shows that the trial court ordered the Association to "produce in response for Elgohary's Resquest for Production No. 6 copies of invoices for attorney's fees incurred in this lawsuit[.]" The Association's counsel stated on the record that he gave Elgohary the fee statements "along with all of [the] trial exhibits pursuant to the Court's trial preparation order." Elgohary does not make any argument about how the time he had to review the invoices was insufficient or how he would have prepared differently if he had more time. As such, he has not shown how the trial court's ruling was an abuse of discretion.

**Reduction of Attorney's Fees Awarded**

At the conclusion of the bench trial when the judgment of the court was announced, the trial court stated:

> Now, I'm going to arbitrarily reduce the award for attorney's fees in this case to $20,000. If you're unhappy with that reduction, you can certainly take that up on appeal. If there's appeal of this matter, you can certainly take up my completely arbitrary reduction from your $42,000 request, which is probably and, in fact, I do find is completely reasonable and necessary attorney's fees, but I'm going to arbitrarily strike it down to $20,000.

In its sole issue on appeal, the Association contends the trial court abused its discretion in reducing the attorney's fees below that which was reasonable and necessary because it admitted that the reduction was made "arbitrarily."

33

In a declaratory judgment action a trial court may award reasonable and necessary attorney's fees that are equitable and just. *Ridge Oil Co., Inc. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 161 (Tex. 2004). The reasonable and necessary requirements are questions of fact to be determined by the factfinder, but the equitable and just requirements are questions of law for the trial court to decide. *Id.* (citing *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998)). Unreasonable fees can never be awarded, even if the trial court believes them to be just, but the court may conclude that it is not equitable or just to award even reasonable and necessary fees. *Id.* at 161–62. "Section 37.009's 'as are equitable and just' language cannot reasonably be construed to mean anything other than the extent to which such fees are equitable and just and, thus, authorizes an award of attorney's fees less than the amount found by [the factfinder] to be reasonable and necessary." *Id.* at 162. The amount of reasonable and necessary attorney's fees does not dictate their availability under the declaratory judgment act; the trial court must decide whether it would be just and equitable to award them. *Id.* at 163. We review a decision to reduce an attorney's fee award below what is reasonable and just for an abuse of discretion. *Id.* If the judge's decision is not arbitrary or unreasonable, it does not abuse its discretion. *Id.*

Here, nothing other than the trial court's off-the-cuff statement that the reduction was done "arbitrarily," indicates that the trial court abused its discretion

in determining whether the fees were "equitable and just." Contrary to its oral statement, the trial court in its order recited that the fees it awarded were "reasonable and necessary." Whether it is "equitable and just" to award attorney's fees depends not on direct proof, but on the concept of fairness, in light of all the circumstances of the case. *Approach Res. I, L.P. v. Clayton*, 360 S.W.3d 632, 639 (Tex. App.—El Paso 2012, no pet.) (citing *Ridge Oil*, 148 S.W.3d at 162.) If the trial court acts according to principles of fairness, it does not act arbitrarily. *Chambers v. First United Bank & Trust Co.*, No. 02-11-00047-CV, 2012 WL 1556091, at *11 (Tex. App.—Fort Worth May 3, 2012, no pet.) (mem. op.) (citing *Ridge Oil*, 148 S.W.3d at 162)). The trial court heard testimony, exhibits, and the cross-examination contesting an award of attorney's fees. The trial court was also very aware of the nature of the case, and that the issue regarding the declaratory judgment involved a fairly straight-forward interpretation of the Association's governing documents. Because it is clear that the trial court reduced the attorney's fees based on principles of fairness, it did not act arbitrarily, despite its statement to the contrary.

We overrule both Elgohary's fifth issue on appeal and the Association's first issue on appeal.

35

**CONCLUSION**

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.